Green, J.
delivered the opinion of the court.
The defendant is sued in this case as a member of the firm of Henry Baldwin, Jr., & Co., on a note for $540 54, executed to them by S. & L. T. King, dated 5th April, 1838, payable at the Union Bank in four months, and endorsed by Henry Baldwin, Jr., & Co., and by B. S. Tappan & Co., and which was discounted at the Union Bank for the benefit of B. S. Tappan & Co. the 13th of April, 1838.
The partnership of Henry Baldwin, Jr., & Co. was dissolv *395 ed on the 1st of January, 1838, more than three months before the note in question was endorsed; notice of which dissolution had been published in a newspaper; and the endorsement was made by Henry Baldwin, Jr.,- of the name of his late firm, without the knowledge of the defendant. The firm of Henry Baldwin, Jr., & Co. had been previous dealers with the Union Bank. B. S. Tappan and E. D. Hicks, two of the directors of the Bank, had knowledge of the dissolution of the partnership before the note was discounted; and they were both present as members of the board the day it was discounted. Hicks remained in the director’s room, and acted as a member of the board when the note was discounted, but Tappan (for whose benefit it was offered, and whose name was on it as endorser,) retired into an adjoining room when this note was offered for discount.
The court charged the jury in substance: “that Tappan and Hicks were agents of the Bank, and that if on the day the. note was discounted they had knowledge of the dissolution of the partnership of Henry Baldwin, Jr., &Co., they were bound to communicate that knowledge to the Bank, and if they did not do so, they were guilty of fraud, and that the Bank, whose agents they were, and not the defendant, must suffer by that fraud.”
It is unquestionably true, that fraudulent representations, or a fraudulent concealment of material facts by the agent, when engaged in the transaction of the business of the principal, will charge the latter, constructively through the agent. Story on Agency, 131; Jeffry vs. Bigelow, 13 Wend. 521; Bank United States vs. Davis, 2 Hill, 451. Every director of a Bank is its agent; appointed by the Bank, and held out to the public as entitled to confidence. And where a party has several agents, notice to one is notice to the principal, (as much so, as if all had notice,) in a case where the one thus having notice, is engaged in the transaction. 2 Hill, 464. We do not mean to say, that a director of a bank, having notice of the dissolution of a firm, with which it has been in the habit of dealing, is bound to communicate that knowledge to the other members of the board, unless he is called upon to act as director in a transaction affect *396 ing the interests of the members of the partnership which has been dissolved, or unless the notice were given to him for the ex press purpose of being communicated to the board. National Bank vs. Norton, 1 Hill, 578. Butin a transaction in which he acts as one of the board, notice to one director, is notice to the bank. Ñor can it be necessary, that the notice shall have been communicated to him in relation to the particular transaction on which he is about to act. For if this were so, then would it be impossible for a retiring partner to avoid responsibility. Although he might give every director of a bank notice of the dissolution, yet his former partner might subsequently make a note in the firm name, and offer it for discount, when it would be impossible for him to know the fact, and communicate to the board anew the fact of the dissolution. All that is necessary, is, that the director, acting in the board when the note is offered for discount, should have knowledge of the dissolution. If he have such knowledge he is bound to communicate it to the board. We do not intend to controvert the general doctrine, that “notice must come to the agent while he is concerned for the principal, and in the course of the same transaction;” for notice to a party while he is not acting as agent, is certainly no notice to a principal for whom he may afterwards act. But the existence of knowledge in an agent, when acting for his principal, is notice to the principal, however that knowledge may have been acquired. Thus if an agent, in his own transaction, has had notice of a fact, that notice does not reach his principal, because he is not then acting for his principal; and before he comes to act as such agent, in relation to the subject about which he had notice, he may have forgotten the whole matter; so that it was never present in his mind, while discharging the duties of his agency. But if he had received the notice while he was concerned for the principal, the principal would be bound by it, though the agent might forget the facts, and have no memory of them, during the transaction to which they relate. But certainly, if while an agent is concerned, and acting for his principal, he have knowledge of the facts in relation to which notice is necessary, there can be no necessity for giving formal notice of the same facts, (o the individual who already *397 knows them. It would be very absurd to assume, that although every director may have notice of the dissolution of a partnership, and while on the board considering the propriety of discounting a note that purports to have been endorsed by the firm, they speak to each other of the fact of dissolution; yet, because notice of the dissolution was not communicated to them while thus concerned in this transaction, the Bank had no notice, and the retiring partner is bound. If such a proposition were law, it would be impossible for a retiring partner ever to get rid of responsibility.
But it is said, there was no evidence that these directors had the remembrance, or knowledge of the dissolution of the partnership of Henry Baldwin, Jr., & Co. when this note was discounted. It may be answered, that the jury had evidence that this knowledge had been previously communicated, and they had a right to take into consideration that fact, with all the circumstances attending the transaction, and judge, whether it was reasonably to be inferred, that the fact was remembered and the knowledge still existed.
It is said Tappan retired when the note was offered, and did not act as a director in discounting the paper. It may be answered, that his retirement to an adjoining room was a mere formality; that he was still a member of the board, and that as the note was offered by him, and discounted for his benefit, he was peculiarly bound to communicate the facts within his knowledge in relation to the dissolution, to the other members of the board, and not having done so, he was guilty of a fraud; the responsibility of which should fall on the Bank, whose agent he was, rather than on the defendant.
In the case of The Bank of the United States vs. Davis, 2 Hill’s Rep. 451, Davis drew three bills of exchange, which wex-e endorsed by Chatfield & Tisdale, and accepted by Holden, and were transmitted by the drawer to Williams, one of the directors of the Bank, for the purpose of having them discount, ed for the benefit of the former. Williams put his own name upon the paper, and procured it to be discounted for himself, and appropriated the avails accordingly; he at the time being one of ihe five directors constituting the board which discount *398 ed the paper. His associates had no notice of the fraudulent use of the bills, and supposed the discount was made in good faith for himself. The Supreme Court of New York decided, that Williams was an agent of the bank, which should be deemed to have notice of the fraud, and that Davis was not liable to pay the bills.
We think there is no error, and affirm the judgment.